IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD J. COPPOLA, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HERITAGE FEDERAL | : | NO. 25-6324 |
| CREDIT UNION | : | |

MEMORANDUM

Bartle, J.                                                    March 11, 2026

On November 4, 2025, plaintiff Richard J. Coppola, acting pro se, brought this action against defendant American Heritage Federal Credit Union as a result of a dispute under an agreement related to plaintiff's purchase of an automobile. He alleges: (1) violations of federal law, including the Fair Credit Reporting Act; (2) documentary and other related fraud; (3) deceptive and unfair trade practices; (4) unlawful taking; (5) retention and deprivation of plaintiff's property, property ownership and usage; (6) extortion; (7) irreparable harm to plaintiff's credit potential, credit worthiness, and lending ability; and (8) personal injury and diminished quality of life.

Before the court is the motion of defendant American to stay the case and compel arbitration. Plaintiff opposes the motion on the grounds that he did not agree to arbitration and that even if he did, defendant has waived its right to

arbitrate.  The court held an evidentiary hearing on the motion to resolve factual disputes related to these issues.

I

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., announces "a strong federal policy in favor of arbitration" to overcome "the traditional judicial hostility to the enforcement of arbitration agreements."  See In re Pharmacy Benefit Managers Antitrust Litig., 700 F.3d 109, 116 (3d Cir. 2012) (internal quotation marks omitted).  The FAA provides that "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  White v. Samsung Elecs. Am., Inc., 61 F.4th 334, 338 (3d Cir. 2023) (quoting 9 U.S.C. § 2); see also Parilla v. IAP Worldwide Servs., Inc., 368 F.3d 269, 275 (3d Cir. 2004).  The Supreme Court recently directed district courts to "hold a party to its arbitration contract just as the court would to any other kind" of contract, but courts should "not devise novel rules to favor arbitration over litigation." Morgan v. Sundance, Inc., 596 U.S. 411, 412 (2022); see also White, 61 F.4th at 339.

To compel arbitration, a court must determine that (1) a "valid agreement to arbitrate exists" and (2) "the particular dispute falls within the scope of that agreement."  White, 61

-2-

F.4th at 338.  As with any contract right, "the right to arbitrate may be waived either explicitly or through an implicit course of conduct."  Valli v. Avis Budget Grp. Inc, 162 F.4th 396, 405 (3d Cir. 2025) (internal quotation marks omitted). Because arbitration is a matter of contract, "[t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (internal quotation marks omitted).  Under Pennsylvania law, the elements of an enforceable contract are: (1) mutual assent; (2) consideration; and (3) sufficiently definite terms.  Glover v. Junior, 333 A.3d 323, 331 (Pa. 2025).

## II

Plaintiff attached to his complaint a copy of a Membership Services Request to apply for membership with defendant in order to finance the purchase of a 2019 Volkswagen Atlas (the "Application").  It was signed by plaintiff and dated November 22, 2019.  Three days later, on November 25, 2019, plaintiff entered into a retail installment sale contract with defendant to buy the vehicle.

The Application contained a provision directly above plaintiff's signature line entitled "Authorization."  The word was written in capital letters.  The Authorization provided that by signing the Application, the plaintiff "agree[s] to the terms

and conditions" of a separate "Membership and Account Agreement" as well as various identified "disclosure" documents and "to any amendment [to those documents] the Credit Union makes from time to time which are incorporated herein."  Complaint at Ex. K, Coppola v. Am. Heritage Fed. Credit Union, Civ. A. No. 25-6324 (E.D. Pa. Nov. 4, 2025) (Doc. # 1) (emphasis added).

At the hearing, defendant presented witnesses who established that shortly after November 22, 2019, defendant decided to amend the Membership and Account Agreement to include the arbitration provision in issue.  The amendment was to apply not only to plaintiff but to all of its some 99,000 members. Defendant planned to notify its members by mailing first class a document entitled "Binding Arbitration and Class Action Waiver" that included the amended arbitration provisions (the "Arbitration Agreement").

In mid-December 2019, defendant provided a copy of the Arbitration Agreement and a cover letter to two of its printers, one of which was Colorworks.  It also supplied Colorworks with the names and addresses of half of its 99,000 members, including the name of plaintiff and his correct address in Langhorne, Pennsylvania.  After defendant approved the accuracy of the printing, Colorworks printed copies and placed the Arbitration Agreement and cover letter into envelopes which it addressed based on the information supplied by defendant.  Colorworks then

mailed the envelopes first class on December 19, 2019 at the post-office in Boyertown, Pennsylvania.  A significant number of the mailings were later returned as not being able to be delivered.  The mailing to plaintiff was not one of those returned.

The cover letter, which was dated December 16, 2019, contained the salutation "Dear Member" and was signed by Bruce K. Folke, President/CEO, American Heritage Credit Union.  The letter explained that defendant was "adopting a new Arbitration of Claims and Dispute provision. . . ."  It advised the members that they had until January 15, 2020 to exercise the right to opt out and that instructions on how to opt out were included in the new provision provided with the letter.

The Arbitration Agreement contained the following language:

> Either You or We may elect, without the other's consent, to require that any dispute between us concerning your Accounts and the services related to your Accounts be resolved by binding arbitration . . . This means that whether or not the other agrees, one of us may force the other to arbitrate.

The document then declared, in all capital letters, that "either you or we can require that any disputes be resolved by binding arbitration.  Arbitration replaces the right to go to court."  The arbitration provision further explained what claims or disputes are subject to arbitration.  Those claims include:

-5-

Claims or disputes between you and us arising out of or relating to your Account(s), transactions involving your Account(s), safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies.  Arbitration applies to any and all such claims or dispute, whether they arose in the past, may currently exist or may arise in the future.

The Arbitration Agreement also informed the member that he or she "[has] the right to opt out of this agreement to arbitrate if [he or she] tell[s] us within 30 days of opening [his or her] account or the mailing of [the] notice, whichever is later."  This provision extended the time beyond the January 15, 2019 deadline provided in the cover letter since the time set in the Arbitration Agreement did not expire until 30 days after the mailing which occurred on December 19.

After defendant presented its evidence and plaintiff had cross-examined defendant's witnesses, plaintiff testified that he never received the mailing at his address in Langhorne, Pennsylvania, the address he had given to defendant and the address defendant had forwarded to Colorworks for the mailing.

-6-

III

The "mailbox rule" provides that proof of a mailing raises a rebuttable presumption the mailed item was received. Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 320 (3d Cir. 2014); Murphy v. Murphy, 988 A.2d 703, 709 (Pa. Super. 2010). If plaintiff, the intended recipient, produces evidence as he did here to rebut the presumption, the presumption disappears, "leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue." Panzer v. Verde Energy USA, Inc., 507 F. Supp. 3d 606, 614 (E.D. Pa. 2020) (citing Lupyan, 761 F.3d at 320).

Based on the evidence presented, the court finds that plaintiff did receive this first class mailing which was mailed on December 19, 2019.  Even accounting for some delay as a result of the Christmas holiday, it is reasonable to find that the mailing was delivered by the end of 2019 or if not shortly thereafter.

On the Application which he signed on November 22, 2019, he agreed to be bound by any amendment to the Membership and Account Agreement, which the defendant makes from time to time.  See Complaint at Ex. K, Coppola v. Am. Heritage Fed. Credit Union, Civ. A. No. 25-6324 (E.D. Pa. Nov. 4, 2025) (Doc. # 1).  Even if the court construes the language of the

-7-

Arbitration Agreement to mean that he had 30 days after receiving the mailing to opt out, the time to opt out expired long ago.

IV

In addition, plaintiff argues that even if the agreement to arbitrate is in force, defendant waived its right to arbitrate. The court is not persuaded. After he filed this federal action, defendant swiftly moved to compel arbitration. It did not litigate in this court in ways that appear to be inconsistent with a desire to arbitrate, and it provided clear, reasonably prompt record notice of its intent to compel arbitration. See Valli v. Avis Budget Grp. Inc, 162 F.4th 396, 409 (3d Cir. 2025).[1] Defendant did not waive its right to arbitrate.

V

The motion of defendant to compel arbitration will be granted and the action will be stayed pending arbitration.

---

[1] Plaintiff asserts that defendant waived its right to arbitrate because of its conduct in the previous state court action which plaintiff had initiated against defendant involving some installment sale contract. Coppola v. Am. Heritage Credit Union, No. 25-1932 (Pa. Comm. Pl. Lancaster County Mar. 19, 2025). The state court after some unrelated motion practice ordered arbitration but plaintiff then voluntarily dismissed that action and filed the identical action here. The court finds that the defendant's course of conduct in the state court matter is not relevant to determine whether in this federal action defendant waived its right to arbitration.

-8-